**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL D. HICKMAN, | Case No. 1:12-cv-00547-LJO-SKO-HC |
| Petitioner, | ORDER SUBSTITUTING WARDEN WILLIAM MUNIZ AS RESPONDENT |
| v. | FINDINGS AND RECOMMENDATIONS TO DENY THE PETITION FOR WRIT OF HABEAS CORPUS (DOC. 1), DENY PETITIONER'S MOTION FOR AN EVIDENTIARY HEARING (DOCS. 1, 32, 39), AND DIRECT THE ENTRY OF JUDGMENT FOR RESPONDENT |
| WILLIAM MUNIZ, Warden, | FINDINGS AND RECOMMENDATIONS TO DECLINE TO ISSUE A CERTIFICATE OF APPEALABILITY |
| Respondent. | **OBJECTIONS DEADLINE: THIRTY (30) DAYS** |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 through 304. Pending before the Court are the petition and Petitioner's motion for an evidentiary hearing.

I.  Procedural Background

In the petition filed on April 9, 2012, Petitioner challenges

1

his conviction of possession of a weapon by an inmate with prior convictions, which he sustained in the Kings County Superior Court (KCSC), on grounds of 1) ineffective assistance of counsel (IAC) at both the trial and appellate levels, and 2) bias of the trial judge based on the judge's ruling on a motion to disqualify the judge. (Doc. 1.)  Petitioner also requests an evidentiary hearing.  (Id. at 15.)  Respondent's answer addresses the merits of the petition to the extent that Petitioner fairly presented his IAC claims to the state courts.  On July 31, 2012, Petitioner filed a memorandum in support of his petition; the Court deemed a later application to constitute a request for an extension of time to file a traverse, which the Court granted.  Petitioner filed his traverse on November 20, 2012, and a supplement thereto less than a week later.

In supplemental materials filed on December 9, 2013, and April 14, 2014, Petitioner addressed three claims: 1) error on the part of the trial court in admitting, and ineffective assistance of counsel for failing to seek to exclude, allegedly tainted evidence handled by Officer Agostini; 2) a violation of the prosecution's due process duty to disclose evidence with respect to the testimony of Officer Moreno, and related ineffective assistance of counsel in failing to exclude hearsay evidence of Petitioner's alleged admission of ownership made to law enforcement officers; and 3) an abuse of discretion and statutory violation under state law as well as cruel and unusual punishment resulting from petitioner's sentence, which was based on prior convictions.  (Docs. 32, 38.)

In response to Petitioner's supplemental submissions, Respondent conceded that the first and second claims do not expand Petitioner's first and second claims as stated in the petition and

as addressed in Respondent's answer.  (Doc. 34, 1-2.)  However, with respect to Petitioner's third claim or claims concerning his sentence, this Court determined that Petitioner did not raise his sentencing claim or claims before the California Supreme Court (CSC), and thus, as to any sentencing claim, Petitioner had not shown that state court remedies had been exhausted.  This Court concluded that in any event, the new sentencing claim/s were untimely, and thus the Court disregarded Petitioner's supplemental materials concerning an excessive sentence.  (Docs. 40, 42.)  Thus, the Court considers the petition and a supplement thereto (docs. 1 & 19), the answer, the traverse (doc. 30 in full), and supplements to the traverse (docs. 32 & 39) except insofar as they raise sentencing issues.[1]

II.   Jurisdiction and Order Substituting Respondent

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies in this proceeding.  Lindh v. Murphy, 521 U.S. 320, 327 (1997); Furman v. Wood, 190 F.3d 1002, 1004 (9th Cir. 1999).

The challenged judgment was rendered by the KCSC, which is located within the jurisdiction of this Court.  28 U.S.C. §§ 84(b), 2254(a), 2241(a), (d).  Petitioner claims that in the course of the

---

[1] The Court further notes that Petitioner attempts to raise new claims in the traverse and supplements, including being deprived of a disciplinary hearing in prison with respect to his possession of the weapon, insufficiency of the evidence to support his conviction in violation of the Due Process Clause based on the unreliability of the correctional officer's evidence, and denial of his motion to substitute counsel with a resulting denial of Petitioner's right to the effective assistance of counsel.  Petitioner makes no attempt formally to amend the petition to raise these claims, and he makes no showing that he has exhausted these claims or that they would be timely.  The Court exercises its discretion to decline to consider these claims to the extent that they are beyond the pleadings.

proceedings resulting in his conviction, he suffered violations of his constitutional rights.  The Court concludes it has subject matter jurisdiction over the action pursuant to 28 U.S.C. §§ 2254(a) and 2241(c)(3), which authorize a district court to entertain a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court only on the ground that the custody is in violation of the Constitution, laws, or treaties of the United States.  Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000); Wilson v. Corcoran, 562 U.S. - , -, 131 S.Ct. 13, 16 (2010) (per curiam).

An answer was filed on behalf of Respondent Warden Anthony Hedgepeth who had custody of Petitioner at Salinas Valley State Prison (SVSP), his institution of confinement.  (Doc. 17.) Petitioner thus named as Respondent a person who had custody of Petitioner within the meaning of 28 U.S.C. § 2242 and Rule 2(a) of the Rules Governing Section 2254 Cases in the District Courts (Habeas Rules).  See Stanley v. California Supreme Court, 21 F.3d 359, 360 (9th Cir. 1994).

Accordingly, the Court concludes that it has jurisdiction over the person of the Respondent.  However, in view of the fact that the warden at SVSP is now William Muniz, it is ORDERED that Warden William Muniz be SUBSTITUTED as Respondent pursuant to Fed. R. Civ. P. 25.[2]

---

[2]  Fed. R. Civ. P. 25(d) provides that when a public officer who is a party to a civil action in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending, the officer's successor is automatically substituted as a party. It further provides that the Court may order substitution at any time, but the absence of such an order does not affect the substitution.  The Court takes judicial notice of the identity of the warden from the official website of the California Department of Corrections and Rehabilitation (CDCR), http://www.cdcr.ca.gov.  The Court may take judicial notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, including undisputed information posted on

4

III.  <u>Factual Background</u>

In a habeas proceeding brought by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct; the petitioner has the burden of producing clear and convincing evidence to rebut the presumption of correctness.  28 U.S.C. § 2254(e)(1); <u>Sanders v. Lamarque</u>, 357 F.3d 943, 947-48 (9th Cir. 2004).  This presumption applies to a statement of facts drawn from a state appellate court's decision.  <u>Moses v. Payne</u>, 555 F.3d 742, 746 n.1 (9th Cir. 2009).  The following statement of facts is taken from the opinion of the Court of Appeal of the State of California, Fifth Appellate District (CCA) in <u>People v. Hickman</u>, case number F059091, filed on December 9, 2010.

**Facts**

At approximately 1:00 p.m., on September 14, 2008 (September 14), Correctional Officer Cecilia Agostini, who was employed at Corcoran State Prison (CSP), was informed that appellant, an inmate at CSP, was going to be placed in administrative segregation (AS).FN4 The AS placement had been ordered based on a complaint Officer Agostini had made earlier that day that appellant had been "over familiar[ ]" with her. She made this complaint "right after [appellant] gave [her] a letter." He had never given her a letter before and she had not had any "problem" or "issues" with appellant prior to September 14.

FN4. Except as otherwise indicated, our factual statement is taken from Officer Agostini's testimony.

official websites.  Fed. R. Evid. 201(b); <u>United States v. Bernal-Obeso</u>, 989 F.2d 331, 333 (9th Cir. 1993); <u>Daniels-Hall v. National Education Association</u>, 629 F.3d 992, 999 (9th Cir. 2010).

Officer Agostini was instructed to conduct an inventory of appellant's property. She went to the cell appellant shared with his cellmate, Ronald Davis; appellant was removed from the cell; and Officer Agostini directed Davis to place appellant's personal property in "state bags." Davis did so, at which point Officer Agostini took appellant's property to the dining area where she inventoried the items.

Among appellant's property was a television set. It had appellant's name and "CDC number" engraved on it, and it appeared to have been tampered with. Specifically, it "had some missing screws." Officer Agostini "opened up the television" and inside found a metal screw, approximately four and one-half inches long, that had been sharpened to a point and "attached to a plastic melted brown state cup." The officer identified the object as an "inmate-manufactured weapon."

Correctional Sergeant Robert Moreno testified to the following: He was on duty at CSP when, at some time after 1:00 p.m. on September 14, he went to the "holding cell area." Appellant and Davis were in separate holding cells. Sergeant Moreno told them they were going to be placed in AS. In response to a question from Davis, the sergeant told Davis he was being taken to AS "[f]or possession of an inmate-manufactured weapon." At that point, appellant "stated that the weapon that was found in the TV belonged to him." Appellant stated further that he had the television when he had been confined in another institution, and the weapon had been inside the television since he had transferred from that institution.

Ronald Davis testified to the following: While he was in a holding cell, Sergeant Moreno informed him that he was going to be "moved" because "they found a knife in a television." Appellant and another officer were also "present" at the time. Davis heard a "conversation[ ]" between [appellant] and Sergeant Moreno," and at no time did appellant admit that the weapon was his.

People v. Hickkman, no. F059091, 2010 WL 4996611, at *1-*2 (Dec. 9, 2010).

IV.  Standard of Decision and Scope of Review

Title 28 U.S.C. § 2254 provides in pertinent part:

6

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Clearly established federal law refers to the holdings, as opposed to the dicta, of the decisions of the Supreme Court as of the time of the relevant state court decision.  Cullen v. Pinholster, - U.S. -, 131 S.Ct. 1388, 1399 (2011); Lockyer v. Andrade, 538 U.S. 63, 71 (2003); Williams v. Taylor, 529 U.S. 362, 412 (2000).  A state court's decision contravenes clearly established Supreme Court precedent if it reaches a legal conclusion opposite to, or substantially different from, the Supreme Court's or concludes differently on a materially indistinguishable set of facts.  Williams v. Taylor, 529 U.S. at 405-06.

A state court unreasonably applies clearly established federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in an objectively unreasonable manner, or 2) extends or fails to extend a clearly established legal principle to a new context in an objectively unreasonable manner.

7

Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002); see,

Williams, 529 U.S. at 407.  An application of clearly established

federal law is unreasonable only if it is objectively unreasonable;

an incorrect or inaccurate application is not necessarily

unreasonable.  Williams, 529 U.S. at 410.  A state court's

determination that a claim lacks merit precludes federal habeas

relief as long as fairminded jurists could disagree on the

correctness of the state court's decision.  Harrington v. Richter,

562 U.S. -, 131 S.Ct. 770, 786 (2011).  Even a strong case for

relief does not render the state court's conclusions unreasonable.

Id.  To obtain federal habeas relief, a state prisoner must show

that the state court's ruling on a claim was "so lacking in

justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded

disagreement."  Id. at 786-87.

     The standards set by § 2254(d) are "highly deferential

standard[s] for evaluating state-court rulings" which require that

state court decisions be given the benefit of the doubt, and the

Petitioner bear the burden of proof.  Cullen v. Pinholster, 131

S.Ct. at 1398.  Habeas relief is also not appropriate unless each

ground supporting the state court decision is examined and found to

be unreasonable under the AEDPA.  Wetzel v. Lambert, --U.S.--, 132

S.Ct. 1195, 1199 (2012).

///

8

In assessing under section 2254(d)(1) whether the state court's legal conclusion was contrary to or an unreasonable application of federal law, "review... is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S.Ct. at 1398.  Evidence introduced in federal court has no bearing on review pursuant to § 2254(d)(1).  Id. at 1400. Further, 28 U.S.C. § 2254(e)(1) provides that in a habeas proceeding brought by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct; the petitioner has the burden of producing clear and convincing evidence to rebut the presumption of correctness.  A state court decision on the merits based on a factual determination will not be overturned on factual grounds unless it was objectively unreasonable in light of the evidence presented in the state proceedings.  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

With respect to each claim raised by a petitioner, the last reasoned decision must be identified to analyze the state court decision pursuant to 28 U.S.C. § 2254(d)(1).  Barker v. Fleming, 423 F.3d 1085, 1092 n.3 (9th Cir. 2005); Bailey v. Rae, 339 F.3d 1107, 1112-13 (9th Cir. 2003).  Pursuant to § 2254(d)(2), a habeas petition may be granted only if the state court's conclusion was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004).  A federal habeas court must

find that the trial court's factual determination was such that a reasonable fact finder could not have made the finding; that reasonable minds might disagree with the determination or have a basis to question the finding is not sufficient.  Rice v. Collins, 546 U.S. 333, 340-42 (2006).

The deferential standard of § 2254(d) applies only to claims the state court resolved on the merits; de novo review applies to claims that have not been adjudicated on the merits.  Lambert v. Blodgett, 393 F.3d 943, 965 (9th Cir. 2004); Lewis v. Mayle, 391 F.3d 989, 996 (9th Cir. 2004).

V.   Ineffective Assistance of Counsel

Petitioner alleges his right to the effective assistance of counsel protected by the Sixth and Fourteenth Amendments was violated by various omissions of his trial counsel and by his appellate counsel's failures to raise the same issues.

A.   Legal Standards

The law governing claims concerning ineffective assistance of counsel is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  Premo v. Moore, - U.S. -, 131 S.Ct. 733, 737-38 (2011); Canales v. Roe, 151 F.3d 1226, 1229 n.2 (9th Cir. 1998).

To demonstrate ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments, a convicted defendant must show that 1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms in light of all the circumstances of the particular case; and 2) unless

10

prejudice is presumed, it is reasonably probable that, but for counsel's errors, the result of the proceeding would have been different.  Strickland v. Washington, 466 U.S. 668, 687-94 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).

With respect to this Court's review of a state court's decision concerning a claim of ineffective assistance of counsel, the Supreme Court has set forth the standard of decision as follows:

> To establish ineffective assistance of counsel "a defendant must show both deficient performance by counsel and prejudice." Knowles v. Mirzayance, 556 U.S. --,--,129 S.Ct. 1411, 1419, 173 L.Ed.2d 251 (2009). In addressing this standard and its relationship to AEDPA, the Court today in Richter, -- U.S., at -- - --, 131 S.Ct. 770, gives the following explanation:

> > "To establish deficient performance, a person challenging a conviction must show that 'counsel's representation fell below an objective standard of reasonableness.' [Strickland,] 466 U.S., at 688 [104 S.Ct. 2052]. A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance. Id., at 689 [104 S.Ct. 2052]. The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.' Id., at 687 [104 S.Ct. 2052].

> > "With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' ...

> > " 'Surmounting Strickland's high bar is never an easy task.' Padilla v. Kentucky, 559 U.S. --, -- [130 S.Ct. 1473, 1485, 176 L.Ed.2d 284] (2010).

11

An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial [or in pretrial proceedings], and so the <u>Strickland</u> standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve. <u>Strickland</u>, 466 U.S., at 689-690 [104 S.Ct. 2052]. Even under <u>de novo</u> review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.' <u>Id.</u>, at 689 [104 S.Ct. 2052]; see also <u>Bell v. Cone</u>, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom. <u>Strickland</u>, 466 U.S., at 690, 104 S.Ct. 2052.

"Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both 'highly deferential,' <u>id.</u>, at 689 [104 S.Ct. 2052]; <u>Lindh v. Murphy</u>, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, <u>Knowles</u>, 556 U.S., at ----, 129 S.Ct., at 1420. The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ---- [129 S.Ct., at 1420]. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland's</u> deferential standard."

Premo v. Moore, 131 S.Ct. at 739-40 (quoting Harrington v. Richter, 131 S.Ct. 770 (2011)).

### B. Failure to Move to Dismiss the Charge and Present a Viable Defense

Petitioner contends his right to the effective assistance of counsel was violated in two respects by his trial counsel in connection with the television set. Petitioner alleges that counsel unreasonably failed to move to dismiss the charge of possession of a weapon on the ground that the television set in which the weapon was found was issued to Petitioner by the CDCR and was of a type that regulations prohibited prisoners from possessing. Further, counsel presented a defense that the television was not Petitioner's even though a receipt signed by Petitioner documented Petitioner's receipt of the television set. (Pet., doc. 1, 5-7.) Respondent contends that Petitioner failed to exhaust this claim in the state courts, and thus this Court may dismiss the claim.

Generally a habeas petitioner will not be afforded relief in the courts unless he has exhausted available state judicial and administrative remedies. Preiser v. Rodriguez, 411 U.S. 475, 494-95 (1973). However, a court may reach the merits of a claim even in the absence of exhaustion where it is clear that the claim is not colorable. 28 U.S.C. § 2254(b)(2) (an application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state); Granberry v. Greer, 481 U.S. 129, 134-35 (1987); Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005). In accordance with these authorities, Respondent alternatively contends that Petitioner's new IAC claims are groundless even under de novo

13

review.  In the interest of a complete disposition of the case, the Court will consider this claim and a related claim concerning failure to move to exclude Officer Moreno's report.

Petitioner contends he was given the television set after his original set was destroyed.  The CDCR gave him a television set that was black and thus violated its own regulations.  The regulation cited provides that inmates who are ordering new or replacement televisions are to obtain "clear-case appliances, as they become available." (Pet., doc. 1, 17.)  It is unclear whether this regulation was in effect on September 14, 2008, the date of the incident.  Officer Agostini testified at trial that at the time Petitioner possessed the black television, inmates were allowed to possess black televisions; however, inmates were later prohibited from possessing sets that were all black.  (LD 2, 49.)  However, even if it the rule prohibiting black sets had been in effect at the time of the offense, the rule does not require either complete or immediate compliance, but rather depends upon availability, a matter not reflected in the record.

Further, Petitioner has not shown how the nature of the television set would have provided a legal basis for dismissal of the charge of possession of a weapon.  Thus, Petitioner cannot show that the motion would have been granted by the trial court or that the outcome of his trial would have been more favorable had defense counsel filed the motion.  Petitioner has not shown that counsel's failure to move for dismissal was either unreasonable or prejudicial.  Cf. James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994).

In sum, Petitioner has failed to show that defense counsel was ineffective for filing a motion to dismiss on the basis of the

14

nature of the television or its source.  Petitioner has not met the showing required by the <u>Strickland</u> standard.  Accordingly, it will be recommended that the Court deny Petitioner's claim concerning counsel's failure to move to dismiss the charges because Petitioner had a black television set.

Respondent does not address Petitioner's subclaim that defense counsel failed to present a viable defense concerning Petitioner's ownership or possession of the weapon or television set.  The record reflects that defense counsel conducted vigorous cross-examination of all prosecution witnesses; counsel focused on anomalies and inconsistencies in the prison records, the procedures followed in inventorying the cell and creating the photographic record of the discovery of the weapon, and the bases for bias on the part of Davis, Agostini, and other law enforcement witnesses.  Defense counsel called Davis to the stand to contradict the correctional officers' testimony that Petitioner admitted possessing both the television and the weapon.

Counsel's closing argument stressed the unreliability of admissions that were not contemporaneously recorded.  Counsel outlined the significant benefit Davis would have reaped by 1) selecting the television set containing the concealed weapon during the inventory and falsely asserting that it was Petitioner's, and 2) asserting falsely in disciplinary proceedings that Petitioner had acknowledged that the weapon was his.  Counsel also emphasized Davis's poor credibility in light of his prior conviction of first degree murder.  The defense challenged the reliability of not only the prison records of Petitioner's possession of the television set, but also the procedures used to inventory the cell, segregate the

evidence, create photographic evidence of the weapon in the
television set, and document the inmates' admissions.  He emphasized
the absence of any direct evidence that Petitioner either knew of
the presence of, or knowingly possessed, the weapon.  He emphasized
that Agostini's report of overfamiliarity reflected that Agostini
was biased against Petitioner.  Further, because Petitioner had
written Agostini a letter, he would have known that he was subject
to a charge of overfamiliarity and thus was vulnerable to a property
inventory.  It was therefore unreasonable to think that Petitioner
would have risked discovery of a weapon in a television set bearing
indicia of his ownership or possession.  (LD 2, 2 RT 412-24.)

The record reflects that counsel mounted a strong defense, and
contradicts Petitioner's assertions that counsel failed to present a
viable defense.  Petitioner has not shown that counsel engaged in
objectively unreasonable acts or omissions, or that any failings or
actions of counsel resulted in prejudice to Petitioner.  Thus, it
will be recommended that the Court deny Petitioner's claim
concerning counsel's alleged failure to mount a viable defense.

C.  Failure to Attempt to Exclude a Report and Testimony

Petitioner argues trial counsel should have moved, apparently
at the preliminary hearing and at trial, to exclude evidence in the
form of testimony from, and a report authored by, Sergeant Moreno,
that purported to establish that on the day of the incident,
Petitioner admitted he possessed the weapon in the presence of
Moreno and Ronald Davis, Petitioner's former cellmate.  Petitioner
denies having admitted that he possessed the weapon; he asserts he
admitted having received the television from the CDCR.  He argues
that the report that he admitted possessing the weapon was based on

16

a misunderstanding, was uncorroborated hearsay, was untimely under state law, and was not disclosed by the prosecution until March 2009, some six months after the incident, in violation of the prosecution's Brady duty of disclosure.  Petitioner contends that admission of Moreno's evidence was prejudicial because it was the last item of evidence the jury requested to see before returning its verdict.  (Pet., doc. 1, 7-9.)

During the preliminary hearing, Sergeant Moreno testified that on September 14, 2008, the day of the incident, he documented Petitioner's admission on a "128B informational chrono" on the prison's computer.  (LD 1, CT 36-37.)  Moreno testified that about six months later, in March 2009, another officer asked him to write a report documenting Petitioner's admission.  (Id. at 37-38.)  At the preliminary hearing held on April 16, 2009, Moreno recalled Petitioner's exact words from September 14, 2008, namely, that Petitioner said, "The weapon is mine."  (Id. at 39.)

At trial, Moreno testified there was no doubt in his mind that Petitioner admitted to owning the weapon as well as the television. (LD 2, 1 RT 104-05.)  He testified that on the day of the incident, he prepared a 128B report on the computer.  That report was an informational "chrono" that provided information about Petitioner's admission.  (Id. at 88-89.)  In March 2009, Sergeant Moreno prepared a 837C incident crime report.  (Id. at 89-90.)  When the prosecutor asked him why he prepared the incident crime report, Moreno testified that defense counsel had asked for it.  (Id. at 90.) Moreno did not realize he was the only officer to hear Petitioner's confession, and he was not aware that an incident report needed to be prepared.  (Id. at 92-93, 100.)

17

1    Inmate Davis testified that he heard the conversation between
2   Petitioner and Moreno, but he did not hear Petitioner admit to
3   possessing the weapon; rather, he heard Petitioner admit only to
4   owning the television.  (LD 2, 2 RT 348-49.)

5    The record thus contains specific testimony regarding the
6   history of documenting Petitioner's admission as well as Moreno's
7   personal knowledge of the circumstances surrounding, and the
8   substance of, the statements constituting the admission.  Contrary
9   to Petitioner's assertions, Moreno testified he made a record of the
10  admission on the day of the incident; he also recalled the incident
11  at the time of trial.  In view of all this evidence, the fact that
12  Petitioner's cellmate did not recall hearing Petitioner admit that
13  the weapon was his does not render Moreno's evidence unreliable or
14  warrant an attempt to exclude it.  Further, because the later report
15  was written well in advance of trial, there does not appear to be a
16  showing of prejudice from any delay.

17    In sum, it does not appear that the report of Petitioner's
18  admission was untimely in any sense that fatally undermines the
19  reliability of the officer's independent testimony of his
20  recollection of Petitioner's inculpatory statement.  Petitioner has
21  not shown a constitutional violation.  With respect to the admission
22  of relevant evidence contended to be unreliable, the primary federal
23  safeguards are provided by the Sixth Amendment's rights to counsel,
24  compulsory process to obtain defense witnesses, and confrontation
25  and cross-examination of prosecution witnesses; otherwise, admission
26  of evidence in state trials is ordinarily governed by state law.
27  Perry v. New Hampshire, - U.S. -, 132 S.Ct. 716, 723 (2012)
28  (determining that the Due Process Clause does not require a trial

18

judge to conduct a preliminary assessment of the reliability of eyewitness identification made under suggestive circumstances not arranged by the police).  The reliability of relevant testimony typically falls within the province of the jury to determine.  Id. at 728-29.  Absent improper police conduct or other state action, it is sufficient to test the reliability of evidence through the normal procedures, including the right to counsel and cross-examination, protective rules of evidence, the requirement of proof of guilt beyond a reasonable doubt, and jury instructions.  Id.

Moreno's testimony provided an ample foundation not only for admitting the reports, but also for concluding that Petitioner made the admission documented in the reports.  It was therefore reasonable for counsel to seek not to exclude the evidence, but rather to undermine it or limit its impact, such as by extensive and vigorous cross-examination of Moreno during trial concerning the veracity of the officer's testimony and report (LD 2, 1 RT 90-103, 105-06), and by calling Petitioner's cellmate, Ronald Davis, to testify on Petitioner's behalf concerning his participation in the collection and removal of Petitioner's property from his cell as well as his knowledge of statements made by Petitioner to Moreno (LD 2, 2 RT 334-51, 357-60).  Cf. Matylinsky v. Budge, 577 F.3d 1083, 1094 (9th. Cir. 2009) (counsel's failure to object to a prosecution witness's testimony on hearsay grounds was not ineffective assistance under Strickland where the objection would have been properly overruled (citing Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir. 1989)).  There is also no showing Petitioner was prejudiced by counsel's failure to move to exclude Moreno's testimony and report, which were admissible.  Petitioner has not

shown how any unfairness or prejudicial effect resulted from counsel's omission.

In sum, even if evaluated under a <u>de novo</u> standard of review, Petitioner's IAC claim based on counsel's failure to attempt to exclude Moreno's testimony or report is not meritorious. Accordingly, it will be recommended that the Court deny Petitioner's claim.

D.   <u>Failure to Impeach Officer Agostini and to Move to Suppress Photographic Evidence</u>

Petitioner's next IAC claim relates to trial counsel's treatment of a chief prosecution witness, Correctional Officer Cecelia Agostini.  Petitioner alleges Agostini admitted at trial that she staged the photographic evidence by taking the weapon out of her pocket, replacing it in the television, and taking the picture.  Although Agostini testified the photograph represented the subject precisely as she had discovered it, Petitioner contends that Agostini was unreliable because she made a false allegation of over-familiarity against Petitioner.  Petitioner alleges that counsel should have moved to suppress the photographic evidence.  (Pet., doc. 1, 11-13.)  Petitioner alleges that Agostini testified she did not know why she did that, but she also testified that it was standard operating procedure.  Agostini did not mention this in institutional incident reports or in testimony at the preliminary hearing.  Petitioner alleges counsel was ineffective in failing to subpoena Agostini's superior officers to testify that her mode of collection of evidence was not standard operating procedure.  (<u>Id.</u> at 9-11.)

///

The KCSC denied this claim and stated, "In [regard] to his claim of ineffective assistance of counsel, Petitioner has failed to demonstrate first, that his counsel's performance was deficient, and second, that he was prejudiced by that deficiency. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.)"  (LD 6, ord. on petn. at 2.) The CCA and the CSC summarily denied this claim without any statement of reasoning or citation of authority.  (LD 7-8.)  It will thus be presumed that the CSC's denial of the claim was based on the same reasons given by the KCSC.

Although the view of the location of the weapon was reconstructed, the photographs were authenticated as reconstructed images representing the facts as observed by Agostini at the time she discovered the weapon during her inventory of Petitioner's property.  (LD 2, 1 RT 29-30, 56-58, 76.)  Thus, it appears that the evidence was not irrelevant or entirely without demonstrative value. Although Petitioner asserts that Officer Agostini was unreliable because she made a false assertion of over-familiarity, Petitioner admits that the report came in reaction to Petitioner's having given Officer Agostini a letter.  The circumstances do not compel or even suggest a conclusion that Agostini was biased or interested in a way that would destroy the probative value of her report or testimony. There is also no clearly established federal law extending to a prisoner Fourth Amendment protection from a cell search.  See Hudson v. Palmer, 468 U.S. 517, 522-30 (1984).

Because no legal basis appears for excluding the evidence, Petitioner has not shown that counsel's failure to do so was objectively unreasonable.  The failure to make a motion which would not have been successful or was otherwise futile does not constitute

ineffective assistance of counsel.  James v. Borg, 24 F.3d 20, 27
(9th Cir. 1994).  Further, in light of the lack of a legal basis to
exclude the evidence, and considering the strong circumstantial
evidence from multiple reliable sources that supported a conclusion
that Petitioner possessed the weapon, there was no prejudice.  James
v. Borg, 24 F.3d at 27.  Accordingly, it will be recommended that
Petitioner's claim concerning a failure to seek to exclude the
photographic evidence be denied.

In sum, Petitioner has failed to show that counsel performed in
an objectively unreasonable manner, that his conduct undermined
confidence in the outcome of the proceeding, or that his conduct
caused prejudice to Petitioner.  It will therefore be recommended
that Petitioner's IAC claims against his trial counsel be denied.

### E.   Ineffective Assistance of Appellate Counsel

Petitioner alleges his right to the effective assistance of
counsel guaranteed by the Sixth and Fourteenth Amendments was
violated by appellate counsel's failure to raise the foregoing
issues on appeal.  (Pet., doc. 1, 13.)  Because there was no merit
to Petitioner's claims that trial counsel was ineffective, there is
no basis for a claim that appellate counsel was ineffective in
failing to raise the foregoing issues.

Accordingly, it will be recommended that Petitioner's claim of
ineffective assistance of appellate counsel be denied.

### VI.   Denial of the Right to Impartial Tribunal

Petitioner alleges he suffered a denial of his right to an
impartial tribunal when Petitioner challenged the trial judge and
moved to disqualify him from presiding over Petitioner's motions,
for a new trial, and for discharge and substitution of appointed

22

counsel ("Marsden motion").  Petitioner alleges the trial judge was biased because he had ruled against Petitioner during the trial by providing counsel to Ronald Davis before Davis testified and by failing to exclude evidence from Agostini; further, the judge improperly determined the recusal motion himself.  (Pet., doc. 1 at 4, 14-15.)

A.   The State Court's Decision

The KCSC rendered the last reasoned decision on this issue as follows:

> Petitioner, MICHAEL D. HICKMAN (Petitioner) filed a petition for writ of habeas corpus on March 21, 2011 (petition). Petitioner complains that in connection with Kings County Superior Court Case No. 09CM7019, Timothy Buckley, Judge Retired, conducted the hearing involving Petitioner's disqualification motion of the same judicial officer. [. . . .]
>
> Petitioner appealed from his conviction in Case No. 09CM7019. An Opinion as (sic) filed on December 9, 2010 and a remittitur issued. The judgment was affirmed. The sole issued (sic) addressed on appeal was the trial court's denial of Petitioner's Marsden Motion.
>
> It appears from the record that on or about October 26, 2009, Petitioner forwarded to the court a Motion for Trial Court to Set Aside Guilty Verdict and Request for Hearing. Along with the Motion, Petitioner included a Motion for Disqualification for Cause of Judge Buckley. The Motion for Disqualification was not filed by the clerk as the Motion was presented by Petitioner in pro per, at time during which he was represented by counsel. (See, October 15, 2009 Correspondence.) On October 27, 2009, Judge Buckley caused the Motion for Trial Court to Set Aside Guilty Verdict to be filed and the hearing on the same, along with a Marsden Motion, continued to November 6, 2009. On November 6, 2009 Petitioner's Marsden Motion and Motion for Trial Court to Set Aside Guilty Verdict was denied. It does not appear that the Motion for Disqualification was reasserted by defense counsel prior to the trial court's ruling on the Motion for Trial Court to Set Aside Guilty Plea.

23

1

2          IT IS HEREBY ORDERED, the petition is denied. (*People v.*
           *Duvall* (1995) 9 Cal.4th 464, 474.) The Motion for
3          Disqualification (made after the completion of a trial
           over which Judge Buckley presided) was untimely. (Cal.
4          Code of Civ. Proc. § 170.6(a)(2).) The Motion was never
           actually filed nor orally asserted by defense counsel
5          during the pendency of the case. Petitioner also did not
           pursue the issue on appeal and a writ of habeas corpus
6          cannot serve as a substitute for an appeal. (*In re Clark*
           (1959) 51 Cal.2d 838, 840.)
7

8    (LD 6, at 1-2.)

9        The California Court of Appeal and California Supreme Court

10   denied this claim without comment. (Lod. Docs. 7 & 8.) Check cites

11             B.   Analysis

12       A fair trial in a fair tribunal is a basic requirement of due

13   process.  In re Murchison, 349 U.S. 133, 136 (1955); see Arizona v.

14   Fulminante, 499 U.S. 279, 309-10 (1991).  Fairness requires an

15   absence of actual bias and of the probability of unfairness.  In re

16   Murchison, 349 U.S. at 136.  Bias may be actual, or it may consist

17   of the appearance of partiality in the absence of actual bias.

18   Stivers v. Pierce, 71 F.3d 732, 741 (9th Cir. 1995).  A showing that

19   the adjudicator has prejudged, or reasonably appears to have

20   prejudged, an issue, is sufficient.  Kenneally v. Lungren, 967 F.2d

21   329, 333 (9th Cir. 1992).

22       However, there is a presumption of honesty and integrity on the

23   part of decision makers.  Withrow v. Larkin, 421 U.S. 35, 46-47

24   (1975).  Opinions formed by a judge on the basis of facts introduced

25   or events occurring in the course of the current proceedings do not

26   constitute a basis for a bias or partiality motion unless they

27   display a deep-seated favoritism or antagonism that would make fair

28   judgment impossible.  Liteky v. United States, 510 U.S. 540, 555

                                    24

(1994).  Thus, stern and even short-tempered efforts at courtroom administration, and judicial remarks during the course of a trial that are critical, disapproving, or even hostile to counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.  Id. at 555-56.  Likewise, "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women... sometimes display" do not establish bias.  Id.

Here, the state court denied Petitioner's due process claim based on state law concerning the timeliness of motions and the legal effect of a motion brought pro se by a defendant while he is represented by counsel.  However, federal habeas relief is available to state prisoners only to correct violations of the United States Constitution, federal laws, or treaties of the United States.  28 U.S.C. § 2254(a).  Federal habeas relief is not available to retry a state issue that does not rise to the level of a federal constitutional violation.  Wilson v. Corcoran, 131 S.Ct. at 16; Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Alleged errors in the application of state law are not cognizable in federal habeas corpus.  Souch v. Schaivo, 289 F.3d 616, 623 (9th Cir. 2002).  The Court accepts a state court's interpretation of state law.  Langford v. Day, 110 F.3d 1180, 1389 (9th Cir. 1996).  In a habeas corpus proceeding, this Court is bound by the California Supreme Court's interpretation of California law unless it is determined that the interpretation is untenable or a veiled attempt to avoid review of federal questions.  Murtishaw v. Woodford, 255 F.3d 926, 964 (9th Cir. 2001).

Here, the record reflects regular proceedings.  There is no indication that the state court's interpretation of state law was associated with an attempt to avoid review of federal questions.  Thus, this Court is bound by the state court's interpretation and application of state law.

To establish that the judge was biased, Petitioner relies on the judge's rulings against Petitioner in the course of the case and the judge's extending procedural protections, such as the assistance of counsel, to a witness.  Here, the judge's rulings were routine and do not reflect bias.  Similarly, advising Davis of his rights, including the privilege against self-incrimination and entitlement to the appointment of counsel in connection with testifying, did not reflect bias.  Testifying arguably exposed Davis to a risk of prosecution for perjury as well as possession of the weapon.  In such circumstances, the state court was required to proceed as it did.[3]  These routine events in the course of trial proceedings do not suffice to overcome the presumption of propriety.  Whether the claim is judged under the deferential standard of § 2254(d) or under the more demanding standard of de novo review, Petitioner has not shown a violation of his right to a fair and impartial tribunal.  Cf. Knowles v. Mirzayance, 556 U.S. 111, 123-24 (2009).

---

[3] California Rules of Court, Rule 5.548 provides as follows:

If a person is called as a witness and it appears to the court that the testimony or other evidence being sought may tend to incriminate the witness, the court must advise the witness of the privilege against self-incrimination and of the possible consequences of testifying. The court must also inform the witness of the right to representation by counsel and, if indigent, of the right to have counsel appointed.

1    Accordingly, it will be recommended that Petitioner's claim

2 concerning the trial judge's consideration and denial of the motion

3 for recusal be denied.

4    VII.   Request for an Evidentiary Hearing

5    Petitioner requests an evidentiary hearing with respect to his

6 claims.

7     The decision to grant an evidentiary hearing is generally a

8 matter left to the sound discretion of the district courts.   28

9 U.S.C. § 2254; Habeas Rule 8(a); Schriro v. Landrigan, 550 U.S. 465,

10 473 (2007).   To obtain an evidentiary hearing in federal court under

11 the AEDPA, a petitioner must allege a colorable claim by alleging

12 disputed facts which, if proved, would entitle him to relief.

13 Schriro v. Landrigan, 550 U.S. at 474.

14    An evidentiary hearing is not required where the state court

15 record resolves the issues, refutes the application's factual

16 allegations, or otherwise precludes habeas relief.   Schriro v.

17 Landrigan, 550 U.S. at 474.   No evidentiary hearing is required for

18 claims based on conclusory allegations.   Campbell v. Wood, 18 F.3d

19 662, 679 (9th Cir. 1994).   Likewise, an evidentiary hearing is not

20 required if the claim presents a purely legal question, there are no

21 disputed facts, or the state court has reliably found the relevant

22 facts.   Beardslee v. Woodford, 358 F.3d 560, 585-86 (9th Cir. 2004);

23 Hendricks v. Vasquez, 974 F.2d 1099, 1103 (9th Cir. 1992).

24    Here, Petitioner has not alleged a colorable claim or claims by

25 alleging disputed facts which, if proved, would entitle him to

26 relief.   As previously set forth, the state court record resolves

27 the issues, refutes the application's factual allegations, and

28

otherwise precludes habeas relief.  See Schriro v. Landrigan, 550
U.S. at 474.

Accordingly, it will be recommended that the Court deny
Petitioner's request for an evidentiary hearing.

VIII.  Certificate of Appealability

Unless a circuit justice or judge issues a certificate of
appealability, an appeal may not be taken to the Court of Appeals
from the final order in a habeas proceeding in which the detention
complained of arises out of process issued by a state court.  28
U.S.C. § 2253(c)(1)(A); Miller-El v. Cockrell, 537 U.S. 322, 336
(2003).  A district court must issue or deny a certificate of
appealability when it enters a final order adverse to the applicant.
Habeas Rule 11(a).

A certificate of appealability may issue only if the applicant
makes a substantial showing of the denial of a constitutional right.
§ 2253(c)(2).  Under this standard, a petitioner must show that
reasonable jurists could debate whether the petition should have
been resolved in a different manner or that the issues presented
were adequate to deserve encouragement to proceed further.  Miller-
El v. Cockrell, 537 U.S. at 336 (quoting Slack v. McDaniel, 529 U.S.
473, 484 (2000)).  A certificate should issue if the Petitioner
shows that jurists of reason would find it debatable whether: (1)
the petition states a valid claim of the denial of a constitutional
right, and (2) the district court was correct in any procedural
ruling.  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

In determining this issue, a court conducts an overview of the
claims in the habeas petition, generally assesses their merits, and
determines whether the resolution was debatable among jurists of

reason or wrong.  Id.  An applicant must show more than an absence of frivolity or the existence of mere good faith; however, the applicant need not show that the appeal will succeed.  Miller-El v. Cockrell, 537 U.S. at 338.

Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner.  Petitioner has not made a substantial showing of the denial of a constitutional right.  Accordingly, it will be recommended that the Court decline to issue a certificate of appealability.

IX.   Recommendations

Based on the foregoing analysis, it is RECOMMENDED that:

1) The petition for writ of habeas corpus be DENIED;

2) Petitioner's motion for an evidentiary hearing be DENIED;

3) Judgment be ENTERED for Respondent; and

4) The Court DECLINE to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within fourteen (14) days (plus three (3) days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 19, 2015**                          **/s/ Sheila K. Oberto**
                                        UNITED STATES MAGISTRATE JUDGE